The next case on the call of the docket is agenda number 11. Case number 131444, Fausett v. Walgreens. Counsel, are you ready to proceed? I am, Your Honor. Please proceed. Thank you. May it please the Court. Counsel, I am Robert Riley and I represent Walgreens. I want to start by acknowledging that every case you hear is important. This case is important because it frames a fundamental issue about who decides whether a private citizen has the right to bring a claim in the Illinois courts. Ms. Fausett has taken a very clear position and it's set out at page 49 of her brief. She says the two federal statutes that are involved here, the Fair and Accurate Credit Transactions Act and the Fair Credit Reporting Act, both federal statutes, quote, confer standing because it is the legislature that determines who has the right to sue. Now, this Court has addressed that same question several times, prominently in Estate v. Burgesson, where the Court said just the opposite. The Court said, and I quote, standing as a component of justiciability must be judicially defined. The case that brings that fundamental issue to you involves a class certification ruling based upon a complete factual record about whether there is a concrete injury here and a clear statutory framework. The trial court found that it was conceded that Ms. Fausett is a no-injury plaintiff. The case turns on a couple of receipts that put a bank identification number on the receipt, which has nothing to do with Ms. Fausett. It identifies a bank. It doesn't identify her in any way, shape, or form. There's an evidentiary record where she admits she suffered no identity theft. There's an evidentiary record that shows she couldn't have her identity stolen with this bank identification number, and that it's undisputed. She alleges conclusorily, well, there was a risk of identity theft, but the evidence shows there was no such risk, that there was expert testimony saying nobody could use a bank identification number to steal her identity, and no one did. She hasn't done anything to try to prevent identity theft because it's not necessary. Counsel, does Rosenbach control? Respectfully, it doesn't, Your Honor, for a number of reasons. Rosenbach involves the Biometric Information Protection Act, BIPOC. And if I lapse into those acronyms, I apologize. These acts have long names. And the General Assembly was very clear what it was concerned about, immutable, unchangeable characteristics, your thumbprint, the mere disclosure of which is harmful. And the General Assembly compared that, contrasted it, actually, to financial identifiers because you can't change your thumbprint. You can change your Social Security number, for example, which this Court had to address a risk, an alleged risk, in PETA, where the issue was a Social Security number. The General Assembly said those two aren't the same. They're very different. This Court cited that language in the legislative history of BIPOC in its decision in Rosenbach. So, Counsel, in Rosenbach, did the legislature speak specifically to who could sue and the nature of or what was required as far as an injury? It did the former and not the latter, Your Honor. The legislative language there was whether a party was aggrieved. Rosenbach came to you on a Rule 308 set of certified questions, two questions, both of which focused solely on the meaning of aggrieved. And what this Court said is, well, we have to do some statutory interpretation of what aggrieved means. The Court never discussed, never used the word standing, never addressed the question of whether there was concrete injury as the standing requirement in Illinois indisputably requires. It did what it was asked to do with the Rule 308 certified question. And so it examined the statute, BIPOC, which it found to be unique. The interest protected was found to be unique, immutable. Nobody can change their thumbprint. So it was very sharply focused on trying to figure out whether the Court could find that a party was aggrieved under the statute. Now, didn't Rosenbach, in fact, hold that an individual need not allege an actual injury in order to have standing? Respectfully, Your Honor, I think that's not what the Court held. What the Court actually said was compromising a biometric characteristic is a, and I'm quoting the Court, is a substantial and irreparable harm. But it did not say that a person need not state an actual injury in order to be aggrieved. Correct. And that, I think, raises the very important issue, Your Honor, the difference between a statutory prerequisite, which happens all the time, where the statute will say that there are certain prerequisites that have to be met. There were statutory prerequisites in FACTA and FCRA here. There has to be a transaction. But the statute's what guides this, correct? Not when it comes to standing. When it comes to the statutory prerequisites, that's not a substitute for standing, and the Court's never so held. The Court has never abdicated to the legislature the power to decide standing as the Court finds it. It can set statutory prerequisites, but that's a necessary condition to bringing the claim. It's not sufficient to establish standing. But the Court is interpreting that statute, correct? Interpreting determination about what is necessary for a litigant to be aggrieved to pursue a cause of action. Yes. And is that expressly outlined in this statute? No, actually it's not. A fair reading of this statute is it has its statutory prerequisites, the federal statutes. You've got to have a credit or debit card transaction, and you've got to have to, if you have a willful violation of a statute, all the statute says is you can be excused from proving up a quantification of your damages if you elect it. You can choose to take a statutory remedy instead of proving actual damages. Actually, neither statute ever refers to standing. They don't purport to decide standing. And if they did purport to decide standing, the Congress has no constitutional authority to do that. It can impose non-standing prerequisites. It did here. But it can't usurp the power of the courts to decide whether a person, a private litigant, has standing. This isn't just the Rosenbach decision. And by the way, Rosenbach said, and I don't presume to interpret what the court intended. The court knows what it intended. I can present what the court said. What the court said in Rosenbach is that where a biometric identifier is compromised, quote, the injury is real and significant. That cannot be said about this case. There is no real and significant injury that is associated with disclosure of a bank identification number that has nothing to do with Ms. Fonsette and can't be used to steal her identity and hasn't been used to steal her identity. But you confronted in the Pettit case a bare allegation that somehow there was a risk. And there's a bare allegation of a risk here. And the court said that is not good enough. There's got to be some evidence of misuse of information. We don't concede that this information could be misused. But there's no dispute that it wasn't misused by anybody. It wasn't disclosed to anybody outside the parties to the transaction. So we don't have the factual underpinnings or the legal underpinnings of Rosenbach. Counsel, you suggested that this court should defer to what federal courts have done in interpreting the language of the statute in question here. Tell us why under the facts of this case. And I appreciate the way that question was asked because it correctly articulates our position, which is where the federal courts uniformly interpret the meaning of federal statutes, that's entitled to great deference. Four different circuit courts of appeal have said the disclosure of the bank identification number does not invoke a privacy interest, does not create a risk of identity theft. And the cases don't hold to the contrary. The United States Supreme Court has weighed in on the issue of whether or not the Congress would have the power, even if it had purported in these statutes to decide standing. It doesn't have the power to do it because the Congress, under the separation of powers doctrine, can't dictate to the courts who does or does not have standing as a private litigant. It cannot transfer the power of the executive to enforce federal regulations on a no entry plaintiff simply by declaring that you can sue as a private litigant under certain circumstances. This court still has to be satisfied that whomever wants to exercise that right has standing. And this court has said over and over again, there's multiple three-pronged tests, but the one we're focused on here is, is there a concrete injury? The facts of this case do not give you any evidence of a concrete injury. And the plaintiff doesn't make any bones about it. Ms. Fawcett says all we have to allege is a violation of a statute and nothing more because it is the Congress who decides standing. That has never been the law in Illinois. It shouldn't be the law in Illinois. It would be unconstitutional to delegate, for the legislature to presume that it would take the power to decide who has standing away from the courts, away from this court, and dictate who has standing and who does not. They didn't do so in these two federal statutes in any plain language. Again, makes no references to giving people standing at all. But even if it had, it had no power to do so. Counsel, this is kind of an aside, but you're not contesting that Walgreens failed to comply with the statute, right? Well, we do in the sense that, in the following sense. The statute applies to transactions where you accept a credit card or a debit card. We didn't do that here. We do contest that. And so does that language mean that it has to be a specific transaction that involves a credit card? Yes. Or does that mean if the merchant accepts credit cards, period? It is the former. And there's a decision on that that, again, it's the Seventh Circuit interpreting what the statute means. So you're not conceding that you did not comply with the statute? I am not making that concession, Your Honor. We've kind of fought that all the way through this case. And the reason that I would give Your Honor to, besides just the statutory language, is that in the 1-800-CONTACTS case that we cite, in our case where the Seventh Circuit reads this statute and interprets this statute as to what it means, and it says that it only, it interprets the statute as involving the acceptance of a credit or debit card as a means of payment. And there's no contrary authority. And that's federal, so it's not binding on us. It is not binding. If we were to read that or interpret that differently, then one could find that you didn't comply with the statute. And why aren't you doing it the way that the statute requires? Well, what I would say, Your Honor, is that federal decisions on Article III standing are a different proposition than federal courts interpreting the statutory intent of a federal statute, which this court is certainly free to disagree with, but the court's decisions suggest you would do so with great hesitance. So you agree that we're not bound by that, and that brings me again to my other question. So why isn't Walgreens complying? Why don't they just do it the way they say you have to? Until the trial court in this case denied our motion to dismiss on grounds that this statute doesn't even apply in its face to this transaction, no court in the country had ever so held. When the court so held over our objection, which we've pursued, it's at that point when Walgreens changes its practice. I think it is something important to note here. So you're saying now that they are not complying?  Okay. Well, while I'm not conceding they were ever noncompliant, I will say that the truncation requirement, including BIN numbers, they're no longer put on these cash reload transactions. Walgreens had nothing to gain by putting the bank identification number, which is also on the face of the card, on the receipt. It did so in order to help a customer. If the customer didn't get the cash credit on the card that it paid cash to get, then there would be a receipt that they could use and show and say, no, I put my cash in here and I want to see it credited to this prepaid card. It wasn't to benefit Walgreens. It was to benefit the customer. Ironically, no good deed goes unpunished, and it faces a class action of 1.6 million people who are claiming, but no, they've actually should be sued for doing that. But no, once a trial court made the first ever, and by the way, there's been no trial court since, no court anywhere since, who's made that ruling. The second district didn't even address it. It talked about the issue. It acknowledged the issue. It acknowledged that you couldn't have a class certification in the absence of a valid claim. It just didn't decide it, which is very problematic, obviously, for us, and the dissent kind of points out why that was, in the court's words, a non sequitur. We do have the Supreme Court weighing in on the constitutional issues, which, again, are not the same as whether the difference between the doctrinal basis for standing, being Article III versus the Illinois Constitution. The transunion case is very, very clear about the absence of any authority, any constitutional authority, any power in the legislative branch to legislate a concrete injury. It says you can't do it. You can't legislate a concrete injury into existence where none exists under the law. This court cited the transunion case for that holding in the Petta case. I think wisely so, because it makes clear where the constitutional divide is between the powers of the courts and the powers of the legislature. The case comes to you with a factual record. It comes to you in a statutory framework. Both of which are decidedly different from Rosenbach. We have respectfully suggested that the court below has misapplied the holding and the reasoning of Rosenbach. We would ask that you make it clear that they did so, and we would ask respectfully that you reverse the second district and find that there is no standing in this case. Thank you. Yes, Your Honor. No, thank you, Counsel. Good morning. Good morning, Your Honor. May it please the Court of Counsel. My name is Adam Vaught, and I represent the Appalachian County Faucet. Walgreens is asking this court to do something it has rejected for decades, which is to follow federal principles of standing. The Rosenbach decision clearly controls how this court views an injury under a statutory cause of action, and it is clear the faucet has standing on Rosenbach. And not only that, Rosenbach fits in with all of this court's standing analysis, and it also shows how state courts are different from federal courts when it comes to standing. In Faucet, this court reversed the appellate court. The appellate court took the case and found that because the plaintiff had not alleged an injury beyond a statutory violation, that she was not aggrieved as defined under the statute, aggrieved is synonymous with injury. This court took it and found that there did not need to be an additional injury alleged beyond a statutory violation because the statutory violation alone caused the injury. The legislature had determined that people have rights to the privacy of the biomechanic information. It created a statute to provide a regulatory scheme, and a violation of that act gave damages in the amount of $1,000 or actual damages to any plaintiff. This court found that the violation of the statute caused the injury. That was sufficient for them to bring that claim. That is what this case has. Under the Federal Fair Accurate and Credit Transaction Act, the Congress determined that credit card debit card numbers create a risk of identity theft and created a statutory regulatory scheme that said that any entity that accepts credit or debit transactions was not allowed to print anything beyond the last five digits of that number. And here, Walgreens printed the first six and last four digits in a violation. Congress then incorporated this into the Fair Credit Reporting Act requirements that says if somebody willfully violates the statute that they're liable for actual damages or $100 to $1,000 in damages. Now, the issue is the Congress in FACTA, to use the acronym, and the General Assembly in BIPA created a private right of action for private individuals against private entities that violated that right and provided a statutory damage. Now, providing statutory damages is consistent with the common law tradition where you don't have to have actual damages for every cause of action. Counsel, let me ask you, how do you think our holding in the PETA case plays into our analysis here? Thank you, Your Honor. I think that goes right into what I was about to talk about is the difference between common law and damages. So in PETA, there was four causes of action. Three were negligence-based. One was for a violation of the Personal Information Protection Act. Now, the court said that they did not allege actual damages beyond the imposed increased risk of identity theft. Now, to be clear, there was no allegation that anybody actually gained a Social Security number. What was at issue in that case was public information, phone numbers, addresses. There was no indication that any purported attempt at identity theft was connected to the purported damage breach that the plaintiff had been informed of. But more importantly, in a negligence action, you have to have damages. It's, you know, we all learned this in law school, duty, breach, causation, damages. It's an element. Absent those damages, you can't complain about the negligence of somebody else. You have to personally have suffered a damage. And there is a statutory claim as well. They personally... Let me stop you there. So in PETA, you know, we were talking about the fact that an allegation of an increased risk of harm was insufficient. Are you conceding that your client was not harmed? No, I'm not conceding that. She, one, had the statutory violation. There was an infringement of her statutory right. The second, she testified in her deposition that she suffered anxiety over because identity theft was her biggest fear. I know counsel said that it was conceded. She was a, quote, no-injury plaintiff. I don't concede that. But, you know, stepping aside, the additional injury, even if she hadn't had that additional injury, the statutory violation in and of itself is enough. Going back to PETA, the Personal Information and Privacy Protection Act also was alleged. But that doesn't provide a statutory cause of action. It's tied to the Consumer Fraud Act. And going back to Rosenbach, Rosenbach compared the Biometric Information and Privacy Act's framework to both the Consumer Fraud Act and to the AIDS Confidentiality Act and noted that the Consumer Fraud Act doesn't give a private cause of action. Same thing with the Personal Information and Privacy Act. So without that, you don't have the statutory violation and the statutory damages. But it did compare to the AIDS Confidentiality Act, which said under that, if that medical information is disclosed, then the person has a statutory cause of action and are provided for statutory damages. You know, this is similar, like in a common law, actually a trespass. You don't have to have an actual damage. If somebody steps on your property, you're allowed to sue them for the total trespass because stepping on somebody's property is the injury. You may recover nominal damages, but you don't have to show an additional harm. And under the common law tradition, that was because that's how you enforce your property rights. Without, you know, requiring an additional harm, somebody would then, you know, have to actually walk onto your property and cut down a tree or something. People could walk across your property all day long without you being able to have an ability to enforce their rights. So it doesn't require an actual damage. Same thing with assault, same thing with battery, defamation per se. And declaratory judgment actions can have a heightened risk of injury. It doesn't require an injury. So there's a whole host of common law causes of action that allow for nominal damages. And Congress, in the Fair and Accurate Credit Transaction Act, as well as the General Assembly and the Biometric Act, both recognize that you can recover actual damages or they provide the statutory damages that are nominal. That gives you the damage that is needed. You don't have to have anything additional. Now, the difference between federal law and state law on standing comes to where the constitutional powers of the judiciary come from. Federal court supports a limited jurisdiction created by Article III, which has case and controversies. In Illinois, it's governed by Article VI, Section 9 of our Constitution, which says that the courts have original jurisdiction over all justiciable matters. Now, this court has always said that federal principles of standing are not binding on this court. Now, at times they have incorporated them because they found them useful, and at times they've rejected. Greer, the case both parties are citing to establish the elements of injury in fact in this case, did in fact borrow from the Supreme Court's application of injury in fact that it incorporated only in 1970 in the data processing case, but specifically also rejected data processing's inclusion of what they called the zone of interest test because this court said that that got too much involved to the merits of the statute as opposed to whether or not a person has a right to sue. Walgreens is actually trying to get this court to look to the merits of the statute and say, we just don't think this is important enough. Counsel referenced, for example, expert testimony that was presented below. Now, first, expert discovery hasn't been concluded. They attached an expert report to a motion, a response. But keep in mind, Congress had many and many experts come in and testify in committees, and they made this determination. They listened to everybody, and they said, look, you have we want people to have a right to only have the last five digits to be printed on these receipts. Everything else, increase the rest, and that's where Congress dropped the line. For courts to now step in and say, well, we don't think that's sufficient, is then stepping in and putting its own policy choices ahead of the legislature's. Here, though, we're really specifically focused on standing, which is does she have a right to claim? And it is simply a matter of Congress created a private right of action for a private individual against a private entity who violates that right that has been discovered. And all throughout the briefing, Waterings is taking the position that this court has always required this additional harm. I am very confused by that because it wasn't even until Spokio in 2016 and then TransUnion in 2021 that the Supreme Court said, no, in addition, you have to have an additional harm. The first time the Supreme Court adopted the injury in fact requirements to causes of action generally was in Warren v. Siding in 1975. Even in that case, the court said, but of course Congress can create private rights of action, invasion of creates standing, which is exactly what this court said in Rosenbach. The General Assembly determined that there is an interest in biometric information. They gave a regulatory scheme to protect it. A violation of that act gives you a right of action. That is it. And that's why we say that is all you need. To follow Rosenbach, this court would have to say that you do not require any additional harm in order to bring a statutory violation. And another important thing to think about, too, is we're referencing concrete and particular lies. That is actually a different requirement in federal court than what state courts have. Under Greer, the first thing an injury has to be is distinct and palpable, which means to an individual. But in federal court, it has to be concrete and particular lies. And in TransUnion, the very first paragraph of the opinion says that concreteness comes out of what courts traditionally would have heard as a claim. Now, the reason courts look into that is that when Article III was written, it was very broad and vague. I mean, the framers in Philadelphia knew pretty clearly what they wanted to give Congress the power to do. They were looking at George Washington, so they were comfortable leaving Article II vague. Article III was largely left to Congress to determine, but they put in the case and controversy requirement. So the court has since said, if we're looking at case and controversies, let's look at what the common law allowed at that time. Illinois, however, this court, Illinois, one of the first things the legislature did upon becoming the state is to adopt the common law into our own law. So the common law is a part of Illinois law, but it is not in federal court. Counsel, should this court give, what way should this court give the federal decisions, though, interpreting this federal statute? I know we're talking about standing, and I know, but nevertheless, there are federal cases out there. So if federal, what court deference should it give to federal interpretation of the statute under State Bank v. Cherry if the Supreme Court makes a determination of federal law that's binding? Federal circuit and district courts, they are persuasive. If it is uniform, then the court will accept it unless it's beyond logic or reason. So even if everybody's uniform with those courts like that, it makes no sense. They can depart from it. But we're not talking about an interpretation of a federal statute here. We're talking about interpretation of Article III. Article III doesn't apply to this court. So the transunion holding that there was no concrete harm which denied Article III standing has no merits on the interpretation of the statute. Now, I know that counsel has cited federal cases that, you know, look into whether or not identity theft is prevented by this, but that's post-spokio. That's now the federal courts trying to figure out, okay, looking at Article III, do they have an additional harm beyond statutory violation? That's a federal court problem. That's not a problem for this court or the Illinois courts because we're not dealing with Article III. The jurisdiction is created by Illinois' Constitution in Article VI, Section 9, which says that it can have jurisdiction over original jurisdiction over all justiciable matters. This court has also defined justiciable matters in a way that is contrary to the way the United States Supreme Court looks at this Article III here of prudence. As I said, the contradictiveness part comes out of the look to the common law. But this court said in the Graff decision that, you know, under Illinois, the legislature can create rights that were not known in the common law or equity. So it is saying that you can, this legislature, whether Congress or the General Assembly, can create statutes that create rights that are unknown in common law. So we don't even have to look to the common law as they do when they're interpreting Article III here because the legislatures can come up with something completely new that was unknown to the common law and still create the standing. I also want to address counsel's argument that Congress is trying to impose standing on the Illinois courts. That's not true at all. Under the Fair Credit Reporting Act, which the damages provision is incorporated into the FACTA, it says that the district court shall have jurisdiction or any other court of competent jurisdiction. So all Congress is saying is that if your court can hear this case, you can hear it. Under the supremacy clause of the federal constitution, this court is then bound to follow federal law. And going back to my discussion on Article III, where it was largely left to Congress what the federal judiciary would look like, it was unknown. The supremacy clause specifically requires judges of the state courts to swear an oath to the federal constitution because it was thought it may be the state courts that do have to enforce federal actions. Then it wouldn't be a robust federal judiciary to be hearing. It would be state courts, and those cases will work out. So the framers wanted to make sure that when judges were swearing an oath, they weren't just swearing an oath to their constitutions. They were swearing an oath to the federal constitution as well so that they accurately and honorably upheld those laws. I do want to touch on the reference to Article II that has been in the amicus brief and also was discussed by counsel. I think that's a complete sideshow. If you look at the transunion opinion, that is one sentence that is within the section that is discussing federal standing principles. There's no citation to it. The next question cites a law review article that Chief Justice Roberts wrote in 1992 when he was a practicing attorney. But it's just simply for the principle that Congress could not outsource the Department of Justice to private individuals. That goes to Justice Thomas' dissent in transunion where it looks at private rights versus public rights. You have your own individual claim like Ms. Fawcett does where she had a right to only the last five digits being printed. Walgreens violated that. That creates a cause of action. Public rights are more, and this is where the 1970s, they started to come in with administrative actions. They started really more in the environmental field but did expand. It's like what right does an individual have to come in and tell the government the government should be doing something? Justice Thomas in his dissent in transunion talks about the difference between a common law and somebody who interferes with your personal property versus a complaint about, generally speaking, the public maim where animals could be fed. We've got to show that you actually have an interest in this. You can't just complain that the government is letting too many cows that other people eat. You actually have to say that you have an interest. And so to say that transunion held that FACTA violates Article 2 I just think makes no sense. The whole opinion is just completely set in Article 3. It starts out no concrete harm, no concrete standing, which goes into the injury and FACTA analysis in Article 3 that starts out concrete and particularized, which in Greer this Court didn't adopt. It said it would be distinct and palpable, which means it's just as traceable. It goes to the individual. Ms. Fawcett isn't trying to say Walgreens has to follow federal law. She's saying Walgreens violated a right that was provided to her by federal law. So it doesn't matter that no good deed goes unpunished as you're opposing counsel? What's that? He said no good deed goes unpunished. He said what did Walgreens have? That doesn't matter. No, it doesn't. I guess it does, but not here. If you affirm it, it goes back because there will be a trial, and whether or not this was a willful violation is an issue that will be in the case. I mean that's a defense that Walgreens would still have. We're at class certification here. The factual determinations haven't been made. They could say it was an accident, we didn't mean to do it. To Justice Flora White's question about what Walgreens did, I believe it's in the record. If not, I may be speaking out, and I apologize. But after the motion to dismiss was denied, I think Walgreens then fixed it, and it took like 48 hours for them to fix the point of sale system. So it wasn't like this was a hard fix or, you know, they made a conscious decision they were going to put the first six and last four, and then when they got the motion to dismiss denied, they turned around and were able to, you know. So that's a problem they'll have. So I don't want to say that it doesn't bear, but it doesn't bear to you. It doesn't bear on standing. The state court, the Illinois courts should be very clear that they control their jurisdiction. I do not contest that at all. But this court has always said that it controls its standing requirements. It does not follow federal law. To the extent it doesn't follow federal law, it has also said that it leans towards more liberality. And that's why standing is an affirmative defense. It's not a part of justiciability. In federal court, you must have standing all the way through, or otherwise the court can lose jurisdiction. This court, you can waive standing. A recent case was in the Pre-Trial Fairness Act, Roe v. Raul, where in the trial court, the state challenged the standing of the state securities and shares. Would you have been comfortable with the court, the dissent said that the majority in the appellate court should have limited its holding to standing and should not have affirmed the trial court's class certification order. So are you saying that, what's your response to that? Well, I think the appellate court majority did what it was supposed to do in the context of what had been given. So when class certification was granted, Walgreens appealed, filed a petition for a leave to appeal to the second district and raise all issues related to class certification. Then when that was denied, it appealed to this court, but only raised the standing issue. Because Duncan and Soto had held that, had both been taken on this question after the appellate courts had found that there was standing, but then were vacated upon settlement. They only raised this issue the court granted, and then I think it was Friday before it was going to be argued on Tuesday, the court issued an order saying it was improperly granted because the parties weren't talking about what the appellate court decided and sent it to the second district and said, but take the briefs that were filed. So at that time, Walgreens was locked in on just bringing the standing argument, not the other ones that they had abandoned when they appealed. So that's what the appellate court was dealing with, was just the question of standing. And then when they lost an appeal here, now we're just with standing. So those other issues, it was proper for the appellate court to affirm class cert on standing alone, because that really was all that was before it. Counsel, please bring your argument to a conclusion. Thank you, Your Honor. We ask that this court find that Ms. Fawcett has standing and affirm the appellate court. Thank you. Your Honor, the issue you just asked about was fully briefed in the second district. The court just chose not to reach it, despite the fact that the validity of the cause of action is a prerequisite to class certification. As for the discussion we just heard about the PETA case and the supposed distinction because the Consumer Fraud Act purports to require an actual injury, there isn't a word in this court's decision in PETA that says its standing analysis is based upon that language in the Consumer Fraud Act. I made sure when I went back and I heard that argument to look at the PETA decision. The court cites its own rulings as to what is required for standing. It says unequivocally, concrete injury is required by the courts. The court wasn't relying on anything said by the Congress. It was relying upon its own jurisprudence about what a concrete injury is. There was no concrete injury there and there's no concrete injury here. The counsel may not concede today that his client is a no-entry plaintiff. So is counsel incorrect when he says a violation of the statute constitutes the injury? He is incorrect, yes. And because? And the reason for that is, Your Honor, is that you certainly have to meet statutory prerequisites that acknowledge this right. But that is necessary, but it's not sufficient under this court's rulings to identify you as a plaintiff who has standing to sue. A mere violation is not enough. Now there's, counsel has made light, or given very little deference to the Supreme Court's statements in the TransUnion case. While this court said in different contexts, such as the zone of interest test, Illinois doesn't buy the zone of interest test at a time when the federal courts did because of the doctrinal difference. Now interestingly enough, the federal courts turned around and agreed with this court because it abandoned the zone of interest test too. And yet here we have a plaintiff who's only alleging I'm in the zone of interest intended to be protected. She's not saying she has a concrete injury. She's saying she doesn't have to have a concrete injury. But doesn't the allowance for statutory damages sort of confer that there will be people that don't, that this is the concrete injury, that being, you know, entitled to have only so many digits and the violation itself? I don't believe you can find that in the language of the statute because the statute doesn't purport to say anything like that. What the statute says is under certain circumstances, certain prerequisites are met, you don't have to quantify your damages if you don't want to. You can take a statutory remedy in lieu of, because sometimes it's difficult to quantify what your damages are from an injury. It doesn't relieve you of proving an injury as defined by the courts. And that's the distinction. The Supreme Court, whether you consider it as a binding precedent or a stern warning about constitutional power, in TransUnion, this is what the court said. Creation of a statutory prohibition and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm. I believe that that is, at a minimum, a caution that is entitled to great deference. But I recognize something Justice Jackson said a long time ago, speaking of the Supreme Court, that the court is not final because it's infallible, but it's infallible because its decisions are final. And I always respect the humility in that, but I also find in there a great statement of the responsibility of the Supreme Court to decide the law. And this case asks you to decide who is empowered to determine whether a private citizen has standing to sue in an Illinois court. It's a tremendous responsibility, but it comes framed by a factual record that can't plausibly be suggested proves a concrete injury, as this Court has defined it consistently in its opinion. Ginsburg-McGill. Counsel, I'm struck by the argument of your opponents that the language of Section 1681NA1A indicates that the legislature's intent to provide alternative recovery if there were no actual damages is highlighted by the fact that they use the disjunctive or in that statute where it says any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more. than $1,000. So according to your opponent, that or makes it clear that something other than actual damages is possible if the statute is violated. Can you speak to that? of having to quantify the damages. It doesn't relieve the party of having to prove an injury. A party who has actual damages could still choose a statutory remedy and forego having to prove the quantification of damages. That's what that says. It doesn't say. The Congress has determined that you don't have to have a concrete injury. But even if that language, which I think is ambiguous, I don't think it can be reconciled with the Clarification Act of 2008 where the Congress said very plainly this isn't intended to facilitate claims of people who have no injury. Put it all aside. If it is read to be a congressional decision to assert the power to determine who has standing to sue, the Congress doesn't have the power to do it. It does not have that power. Only the courts have that power. And this court has that power to decide it here. And you have a factual record that shows there is no concrete injury as you defined it. You have a statute that isn't the BIPA statute. This case doesn't involve any personal identifier at all, let alone an immutable, unchangeable biometric identifier. It doesn't even involve an identifier of Miss Fosley. There is no claim that her identity has been stolen. There is no evidence to support the risk that she conclusorily alleged that she could have her identity stolen. And the suggestion that counsel had full opportunity to put anything Miss Fosley wanted in the factual record before the class certification hearing or after the class certification hearing, it shows not to. So the record is what it is. That's the record you have. These federal statutes do not involve the issues you addressed in Rosenbach. And the real question, and I would suggest the responsibility here is to decide, can the Rosenbach decision where you found there was substantial and irreparable injury, there was a real and significant injury because of the biometrics, because of the biometrics that were involved, can that be untethered from its factual warnings and its statutory warnings and dropped down on this statute and this factual record? I'd respectfully suggest that it can't. I would respectfully suggest that it shouldn't. And that's why we're asking you to reverse the court of law. Thank you very much. Thank you. The court thanks the attorneys for their arguments. Case number 131444, Fawcett v. Walgreens, will be taken under advisement as agenda number 11.